| | |
|---|---|
| OLD REPUBLIC INSURANCE COMPANY and THE HALLEN CONSTRUCTION CO., INC., | ) ) ) ) |
| Plaintiffs, | ) ) Case No.: 26-cv-2091 |
| v. | ) ) |
| JAMES RIVER INSURANCE COMPANY, | ) ) *Jury Trial Demanded* |
| Defendant. | ) ) |

## COMPLAINT FOR DECLARATORY JUDGMENT

NOW COME Plaintiffs, Old Republic Insurance Company ("ORIC") and The Hallen Construction Co., Inc. ("Hallen"), by and through their attorneys, and for their Complaint against Defendant James River Insurance Company ("James River") state as follows:

## INTRODUCTION

1. This is an insurance coverage action. ORIC and Hallen seek a declaration from this Court that James River has an obligation to defend and indemnify Hallen as an additional insured on a sole, primary basis pursuant to the provisions of a contract (the "Contract"), attached as **Exhibit 1**, between Hallen and New York Paving, Inc. ("NY Paving"), and James River's policy issued to NY Paving, with respect to the following six (6) lawsuits: (i) *Darrin Batten v. The Brooklyn Union Gas Company d/b/a National Grid NY, et al.*, Index No. 525743/2024, filed in the Supreme Court of Kings County (the "*Batten* Lawsuit"); (ii) *Joyce Lakin v. The City of New York and Brooklyn Union Gas Company d/b/a National Grid New York*, Index No. 511740/2020, filed in the Supreme Court of Kings County (the "*Lakin* Lawsuit"); (iii) *Argentina Tavarez v. 400 South 2nd Street Realties L.P., et al.*, Index No. 510423/2022, filed in the Supreme Court of Kings County (the "*Tavarez* Lawsuit"); (iv) *Allan Kanare v. The City of New York, et al.*, Index No. 523522/2020, filed in the Supreme Court of Kings

County (the "*Kanare* Lawsuit"); (v) *Victoria Gioia v. The City of New York, et al.*, Index No. 502174/2021, filed in the Supreme Court of Kings County (the "*Gioia* Lawsuit"); and (vi) *Miguel Cornelio Nunez v. 333 Seneca Holding Co. LLC, et al.*, Index No. 701630/2020, filed in the Supreme Court of Queens County (the "*Nunez* Lawsuit") (collectively the "Underlying Lawsuits").

2.      Various plaintiffs (collectively "Underlying Plaintiffs") in the Underlying Lawsuits allege that they were injured at a location where NY Paving performed work pursuant to the Contract.

3.      James River has engaged in a pattern and practice of denying tenders of defense made by Hallen in relation to several other "bodily injury" lawsuits pending in various New York state courts that involve NY Paving, Hallen, and National Grid USA ("National Grid"), which amounts to a bad faith breach of Hallen's rights as an additional insured under the various policies of insurance James River has issued to NY Paving as the named insured.

## PARTIES

4.      James River is incorporated in Ohio and maintains its principal place of business in Richmond, Virginia.  James River is an approved, non-admitted specialty insurer in New York.

5.      ORIC is incorporated in Pennsylvania and maintains its principal place of business in Chicago, Illinois.

6.      Hallen is incorporated in New York and maintains its principal place of business in Plainview, New York.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332(a), 2201, and 2202, as complete diversity exists between the parties and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and Hallen and ORIC seek declaratory relief, which represents an actual controversy within this Court's jurisdiction.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim at issue in this action occurred within this district, and the underlying lawsuits at issue in this coverage action are pending in this district.

**THE UNDERLYING *BATTEN* LAWSUIT**

9. On or about September 23, 2024, Darrin Batten ("Batten"), commenced the *Batten* Lawsuit (Index Number 525743/2024) against The Brooklyn Union Gas Company d/b/a/ National Grid NY, Hallen, Consolidated Edison Company of New York, Inc., Tri-Messine Construction Company, Inc., D'Onofrio General Contractors Corp., Yukon Enterprises Inc., Triboro Water Main and Sewer Corp., Welsbach Electric Corp., Triumph Construction Corp., and Verizon New York Inc. A copy of Batten's Verified Complaint is attached as **Exhibit 2.**

10. In his Verified Complaint, Batten alleges that on September 23, 2021, while Plaintiff was lawfully traversing the roadway located at Sterling Place between Kingston Avenue and Brooklyn Avenue, Brooklyn, New York (the "Roadway Area"), his electric scooter hit a defect and caused him personal injuries.

11. Batten alleges in his Verified Complaint in paragraph 142 and 143 that National Grid, NY Paving, and Hallen caused or created the dangerous condition.

12. On February 27, 2025, National Grid and Hallen filed a Third-Party Complaint against NY Paving that included claims for common law indemnity, contribution, contractual indemnification, and failure to procure insurance against NY Paving in the *Batten* Lawsuit. A copy of the Third-Party Complaint is attached hereto as **Exhibit 3.**

13. National Grid and Hallen's Third-Party Complaint is based upon (1) Batten's allegations in the Verified Complaint and (2) their knowledge that NY Paving was working at or near the Roadway Area where Batten alleges he was injured pursuant to the Contract.

14.    National Grid and Hallen's Third-Party Complaint is further based upon the fact that NY Paving was performing work called for in the Contract on or about September 23, 2021, and prior to that date, at or near the place where Batten was allegedly injured in the Roadway Area.

15.    Additionally, National Grid and Hallen assert that Batten's alleged injuries and damages, as alleged in the Verified Complaint, arose out of NY Paving's work, and that any liability as against National Grid and/or Hallen arises solely from NY Paving's Contract work.

### THE UNDERLYING *LAKIN* LAWSUIT

16.    On or about July 7, 2020, Plaintiff Joyce Lakin ("Lakin") commenced the *Joyce Lakin* Lawsuit in the Supreme Court of Kings County styled *Lakin v. The City of New York and Brooklyn Union Gas Company d/b/a National Grid New York*, Index No. 511740/2020.  A copy of Lakin's Verified Complaint is attached as **Exhibit 4**.

17.    Lakin alleges that on December 7, 2019, she was walking along Avenue U adjacent to 2307 Avenue U in Brooklyn when she tripped and fell due to a dangerous and defective roadway or surrounding surface condition.

18.    Lakin alleges that excavation and street opening work performed by utility contractors and subcontractors resulted in an improperly restored roadway, creating an uneven and unsafe condition.

19.    National Grid thereafter commenced a third-party action against NY Paving alleging, among other things, that NY Paving directed, maintained, inspected, or created the defective roadway condition and that any injuries sustained by Lakin were caused "entirely by reason of the negligence, carelessness, recklessness, breach of contract and violations of law of New York Paving."  A copy of the Third-Party Complaint is attached hereto as **Exhibit 5.**

20. The third-party complaint further alleges that NY Paving performed roadway restoration work at or near 2307 Avenue U pursuant to its contract with Hallen. Specifically, the Third-Party Complaint states: "If and in the event that Plaintiff sustained the injuries and damages complained of, such injuries and damages were caused entirely by reason of the negligence, carelessness, recklessness, breach of contract and violations of law of Third-Party Defendant or its affiliates, there being no active or primary wrongdoing on the part of Defendant/Third-Party Plaintiff contributing thereto."

**THE UNDERLYING *TAVAREZ* LAWSUIT**

21. On or about April 8, 2022, Plaintiff Argentina Tavarez ("Tavarez") commenced an action in the Supreme Court of Kings County styled *Argentina Tavarez v. 400 South 2nd Street Realties L.P., et al.*, Index No. 510423/2022. A copy of Tavarez's Verified Second Amended Complaint is attached as **Exhibit 6**.

22. Tavarez alleges that on April 1, 2021, she was walking adjacent to 400 South 2nd Street in Brooklyn when she tripped and fell on a defective condition located near a fire hydrant.

23. Tavarez alleges that defendants caused or created the defective sidewalk and roadway through improper construction, maintenance, and restoration practices.

24. On February 12, 2024, the property owners and related entities filed a third-party complaint naming, among others, Hallen and NY Paving. The third-party complaint alleges that NY Paving removed, repaired, and replaced sidewalk flags at 400 South 2nd Street and performed restoration work in the very area where Tavarez claims she fell. A copy of the Third-Party Complaint is attached hereto as **Exhibit 7.**

25. Hallen served its Answer with Cross-Claims against NY Paving, alleging that if Tavarez sustained any injuries, such injuries were caused solely by NY Paving's negligence. More specifically, the Answer and Affirmative Defenses allege: "If the plaintiff sustained damages at the time and place

and in the manner set forth in the Verified Complaint, which this answering third-party defendant specifically denies, and if such damages were not sustained as a result of the plaintiff's own negligence, then said damages were caused by and arose out of the failure of the codefendant, NEW YORK PAVING INC. to perform properly the work it had agreed to perform pursuant to the contract/agreement and said third-party codefendant will have breached that agreement and this answering defendant will be damages thereby and entitled to indemnification from said third-party codefendant, NEW YORK PAVING INC. for the entire amount of any judgment that may be recovered by the plaintiff and against this answering defendant." A copy of the Answer with Cross-Claims is attached hereto as **Exhibit 8.**

26. These allegations establish at least a reasonable possibility that Tavarez's injuries arose out of NY Paving's work and triggered James River's duty to defend Hallen as an additional insured.

## THE UNDERLYING *KANARE* LAWSUIT

27. On or about November 24, 2020, Plaintiff Allan Kanare ("Kanare") commenced a lawsuit styled *Allan Kanare v. The City of New York, et al.*, Index No. 523522/2020, in the Supreme Court of Kings County. A copy of Kanare's Verified Complaint is attached as **Exhibit 9**.

28. Kanare alleges that on December 12, 2019, he tripped and fell in the roadway located in front of 1809 Avenue U in Brooklyn due to a dangerous and defective pavement condition.

29. National Grid and Hallen filed a third-party complaint against NY Paving alleging that, prior to the accident, Hallen and NY Paving entered into a contract requiring NY Paving to perform roadway restoration at or near 1809 Avenue U. A copy of the Third-Party Complaint is attached hereto as **Exhibit 10.**

30. The Third-Party Complaint alleges that NY Paving was actively performing work pursuant to that contract at or near the incident location and that the alleged defect fell within NY Paving's restoration area.

31. The Third-Party Complaint further alleges that any liability assessed against Hallen would arise from NY Paving's negligent acts or omissions and that NY Paving breached contractual obligations to defend, indemnify, and procure insurance for Hallen.

32. Specifically, the Third-Party Complaint alleges that: "If Plaintiff was caused to suffer personal injuries and/or damages at the time and place set forth in the Verified Complaint, through any carelessness or negligence other than or including his own, then Plaintiff's injuries and damages were caused by the primary carelessness, negligence and/or affirmative acts of commission and omission of Third-Party Defendant, NY PAVING, its subcontractors, agents, servants and/or employees, with any carelessness or negligence, if any, of Defendants/Third-Party Plaintiffs being secondary and/or derivative only."

33. Notwithstanding these allegations, James River denied Hallen's tender of defense. Under New York law, however, those allegations plainly trigger James River's duty to defend.

### THE UNDERLYING *GIOIA* LAWSUIT

34. On or about January 27, 2021, Plaintiff Victoria Gioia ("Gioia") commenced a lawsuit styled *Victoria Gioia v. The City of New York, et al.*, Index No. 502174/2021, in the Supreme Court of Kings County. A copy of Gioia's Verified Complaint is attached as **Exhibit 11**.

35. Gioia alleges that on January 13, 2020, she tripped and fell on a defective valve cover and surrounding pavement located between 1611 and 1613 East 54th Street in Brooklyn.

36. Gioia contends that excavation and restoration work performed prior to her accident resulted in a dangerous and defective condition.

37. National Grid filed a third-party complaint against NY Paving alleging that NY Paving performed valve cover and pavement restoration at or near the exact location of the accident pursuant to its subcontract with Hallen. A copy of the Third-Party Complaint is attached hereto as **Exhibit 12.**

7

38. The third-party complaint alleges that the incident "arose out of" NY Paving's work activities and that NY Paving's negligence was the greater cause of any injury sustained.

39. Specifically, National Grid's Third-Party Complaint states: "If Plaintiff was caused to suffer personal injuries and/or damages at the time and place set forth in the Verified Complaint, through any carelessness or negligence other than or including her own, then Plaintiff's injuries and damages were caused by the primary carelessness, negligence and/or affirmative acts of commission and omission of Third-Party Defendant, NY PAVING, its subcontractors, agents, servants and/or employees, with any carelessness or negligence, if any, of Defendants/Third-Party Plaintiff being secondary and/or derivative only."

40. These allegations place Gioia's injury within the coverage scope contemplated by NY Paving's contract and the James River policy. James River nevertheless denied Hallen's tender.

## THE UNDERLYING *NUNEZ* LAWSUIT

41. On or about January 30, 2020, Plaintiff Miguel Cornelio Nunez ("Nunez") commenced a lawsuit styled *Miguel Cornelio Nunez v. 333 Seneca Holding Co., LLC, et al.*, Index No. 701630/2020, in the Supreme Court of Queens County. A copy of Nunez's Verified Complaint is attached as **Exhibit 13**.

42. Nunez alleges that on October 4, 2019, he fell due to a hole or depression in the sidewalk located at or near 333 Seneca Avenue in Queens, New York.

43. Multiple third-party complaints were filed, ultimately resulting in Hallen and National Grid impleading NY Paving based on allegations that NY Paving performed roadway and sidewalk restoration at the accident location pursuant to its contract. A copy of National Grid and Hallen's Third-Party Complaint against NY Paving is attached as **Exhibit 14.**

44. The third-party complaint alleges that the condition described by Nunez existed within NY Paving's restoration zone and that NY Paving's failure to properly restore the surface caused or contributed to the accident.

45. Specifically, the Third-Party Complaint alleges: "If Plaintiff was caused to suffer personal injuries and/or damages at the time and place set forth in the Complaint, through any carelessness or negligence other than or including her own, then Plaintiff's injuries and damages were caused by the primary carelessness, negligence and/or affirmative acts of commission and omission of Third-Party Defendant, NY PAVING, its subcontractors, agents, servants and/or employees, with any carelessness or negligence, if any, of Second Third-Party Defendants/Third Third-Party Plaintiffs being secondary and/or derivative only."

46. Hallen tendered defense and indemnity to James River. James River denied the tender using shifting rationales, none of which negate its duty to defend under New York law.

## THE ORIC POLICY

47. ORIC issued a Commercial General Liability Policy, Policy No. MWZY 313093 21, for the Policy Period of May 1, 2021, to May 1, 2022 (the "ORIC Policy"). Hallen is a Named Insured under the ORIC Policy. A true and correct copy of the ORIC Policy is attached hereto as **Exhibit 15**.

48. The ORIC Policy's "other insurance" provision, as modified by Form PGL 031 11 03, provides:

**4.** Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a. Primary Insurance

This insurance is primary only when you are required by contract or agreement to provide primary insurance.

b.	Excess Insurance

This insurance is excess over any of the other insurance, whether primary, excess, contingent, or on any other basis unless such insurance was specifically purchased by you to apply excess of this policy.

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any claim or "suit" if any other insurer has a duty to defend against that claim of "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1)	The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2)	The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

49.	The ORIC Policy's "other insurance" provision, also provides:

**c.	Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limits of insurance to the total applicable limits of insurance of all insurers.

50.	An endorsement to the ORIC Policy, entitled "Primary and Noncontributory – Other Insurance Condition," and designated as Form CG 20 01 12 19, adds the following language to the ORIC Policy's "other insurance" provision, and supersedes any provision to the contrary:

**PRIMARY AND NONCONTRIBUTORY –**
**OTHER INSURANCE CONDITION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABLITY COVERAGE PART

The following is added to the **Other Insurance** Condition and supersedes any provision to the contrary:

**Primary And Noncontributory Insurance**

This insurance is primary to and will not seek contribution from any other insurance available to an additional insured under your policy provided that:

(1)    The additional insured is a Named Insured under such other insurance; and

(2)    You have agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other insurance available to the additional insured.

## THE JAMES RIVER POLICY

51.    James River issued a Commercial General Liability Policy, Policy No. 00067838-5, for the Policy Period of July 30, 2020 to October 15, 2021, to NY Paving as the Named Insured (the "James River Policy").

52.    Upon information and belief, the James River Policy provides coverage to Hallen as an additional insured on a primary, noncontributory basis in relation to the Underlying Lawsuits.

53.    Hallen and ORIC requested a complete copy of the James River Policy issued to NY Paving in relation to the *Batten* Lawsuit. To date, Hallen and ORIC have not been provided with a complete copy of the James River Policy by James River.

**NY PAVING'S CONTRACT WITH HALLEN AND CERTIFICATE OF INSURANCE**

54. On April 1, 2021, Hallen and NY Paving entered into a Contract, which is applicable to the work performed by NY Paving at issue in the Underlying Lawsuits (the "NY Paving Contract"). National Grid is also a named beneficiary of the NY Paving Contract. The NY Paving Contract is attached hereto as **Exhibit 1.**

55. Article 8 of the NY Paving Contract provides, in relevant part, that:

> To the fullest extent permitted by law, [NY Paving] shall, at its own expense, indemnify, defend and hold harmless [Hallen], [National Grid] and any others required to be indemnified by the Project Requirements, and their affiliates, officers, directors, partners, consultants, agents, employees, divisions, departments, agencies, subsidiaries and all others for whom [Hallen] and/or [National Grid] may be responsible (collectively, the Indemnitees), from and against all claims, suits, damages, liabilities, losses, expenses, professional fees and costs, including but not limited to counsel fees, litigation fees, court costs, expenses and disbursements, arising out of or in connection with or as a result of, or consequence of the performance of the Work, as well as any additional work, extra work, modification, change of Subcontractor Scope or add-on work or any other obligation under this Agreement or under the Project Requirements, provided that such claim, suit, damage, liability, loss or expense is attributable to bodily injury, sickness, disease or death or injury to or destruction of or casualty to tangible property (other than the Work itself), as well as purely economic damages, whether or not meritorious or caused in whole or in part by [NY Paving] or any person or entity employed either directly or indirectly by the [NY Paving] including any subcontractors of any tier thereof or their employees.

56. Article 10 of the NY Paving Contract provides, in relevant part, that:

> 10. INSURANCE. The Subcontractor Policies, except for workers' compensation, shall be primary and non-contributory to any General Liability Policy of Excess Policy of insurance that may otherwise be in effect covering [Hallen], [National Grid] and the other Additional Insureds… The Subcontractor Policies shall remain in effect for a period of three years following final completion of the Subcontractor Scope.

**HALLEN'S TENDER OF DEFENSE TO JAMES RIVER**

57. Hallen, National Grid and ORIC tendered defense and indemnity to James River across each of the Underlying Lawsuits.

58. James River denied each tender, refused to acknowledge its obligations, and declined to provide Hallen or National Grid with a defense. James River's denial of tender letters for the Underlying Lawsuits are attached collectively as **Exhibit 16**, along with e-mail exchanges on the *Tavarez* Lawsuit, which has yet to be acknowledged or disclaimed by James River.

59. Although James River does not contest NY Paving's contractual obligations to Hallen under the Contract, James River has nevertheless denied each Hallen tender.

60. James River's wrongful denial of Hallen's tender has forced Hallen, ORIC and National Grid to retain counsel at their own expense in the Underlying Lawsuits.

61. Hallen and ORIC have already incurred, and will continue to incur, defense fees and costs in the Underlying Lawsuits, which should be reimbursed by James River given its obligations to Hallen under the James River Policy.

<u>COUNT I</u>
<u>DECLARATORY JUDGMENT</u>
<u>JAMES RIVER OWES A SOLE PRIMARY DUTY TO DEFEND</u>
<u>HALLEN AND NATIONAL GRID</u>

62. Hallen and ORIC incorporate by reference the allegations of Paragraphs 1 through 61 above as though fully set forth herein.

63. The Contract required NY Paving to obtain and maintain in force certain insurance, including commercial general liability insurance, providing Hallen and National Grid were additional insureds on a primary and non-contributory basis.

64. The pleadings at issue in the Underlying Lawsuits clearly assert that Hallen's liability to Underlying Plaintiffs, if any, is solely vicarious to NY Paving's liability to Underlying Plaintiffs.

65. Accordingly, coverage is triggered under the James River Policy for Hallen as an additional insured in relation to the Underlying Lawsuits.

13

66.     Upon information and belief, the James River Policy provides that Hallen and National Grid are additional insureds in relation to the Underlying Lawsuits based on the requirement in the Contract.

67.     Upon information and belief, based on the Contract, the James River Policy provides coverage to Hallen and National Grid as additional insureds on a primary basis, and James River is solely responsible on a primary basis for the defense and indemnity of Hallen and National Grid in the Underlying Lawsuits.

68.     With respect to coverage for NY Paving and Hallen in relation to the Underlying Lawsuits, the ORIC Policy is intended to be excess over NY Paving's policies.

69.     Accordingly, the ORIC Policy is excess over the James River Policy and ORIC is not obligated to defend or indemnify Hallen in the Underlying Lawsuits.

70.     James River must reimburse Plaintiffs for all of the defense fees and costs Hallen and/or ORIC have expended to date in defending Hallen and National Grid in relation to the Underlying Lawsuits.

**COUNT II**
**BAD FAITH BREACH OF INSURANCE CONTRACT**

71.     Hallen and ORIC incorporate by reference the allegations of Paragraphs 1 through 70 above as though fully set forth herein.

72.     Helmsman, as the Claim Administrator of Hallen and ORIC, tendered the defense of Hallen and National Grid in relation to the Underlying Lawsuits.

73.     James River breached its duty to investigate and analyze the basis of Hallen and National Grid's tender of defense in relation to the Underlying Lawsuits.

74.     Moreover, by refusing to acknowledge the validity of Hallen and National Grid's tender of defense under the James River Policy, and recognize Hallen and National Grid's status as  additional

insureds, James River knowingly or recklessly disregarded the facts and pleadings that support Hallen and National Grid's status as additional insureds under the James River Policy.

75. James River's conduct is part of a pattern and practice where James River has denied tenders of defense made by Hallen and National Grid in relation to several other "bodily injury" lawsuits pending in various New York state courts that involve NY Paving, Hallen, and National Grid, such that ORIC and Hallen were forced to file a similar Complaint, attached as **Exhibit 17**, against James River in 2022 (Case 1:22 cv 02100).

76. For example, James River has wrongfully denied Hallen's and National Grid's tender of defense under the James River Policy, and/or other commercial general liability policies of insurance issued by James River to NY Paving, in relation to the following matters: Giordano, Diaz, Aleman, Graham, Lynch, Oberle, Panuta and Sumsky. The denial of tenders by James River for the above-referenced matters are attached hereto as **Exhibit 18**.

77. James River's denial of coverage to Hallen and National Grid in relation to the Underlying Lawsuits, and the other above-referenced matters, lacks a proper contractual and/or legal basis.

78. As a result of James River's tortious acts in denying a duty to defend in situations where Hallen and National Grid clearly qualify as additional insureds under the James River Policy (and/or other policies of insurance issued by James River to NY Paving), Hallen and National Grid have been and continue to be damaged in an amount to be proven at trial by James River's wrongful denials.

79. Accordingly, in addition to compensatory damages, Hallen and National Grid are entitled to punitive damages insofar as James River has willfully, knowingly and fraudulently engaged in a pattern and practice of denying Hallen and National Grid's tender of defense made in relation to the Underlying Lawsuits, and several "bodily injury" lawsuits pending in various New York state courts

that involve NY Paving, Hallen, and National Grid.  James River has engaged in a pattern and practice of denying Hallen and National Grid's tenders of defense to ensure that Hallen and National Grid would not receive coverage for claims and suits made against them that would otherwise entitle them to coverage under the James River Policy (and/or other policies of insurance issued by James River to NY Paving) as additional insureds.

**COUNT III**
**JAMES RIVER'S DISCLAIMERS ARE UNTIMELY AND VOID UNDER NEW YORK INSURANCE LAW § 3420**

80.     Hallen and ORIC repeat and reallege the allegations contained in Paragraphs 1 through 79 above as though fully set forth herein.

81.     New York Insurance Law § 3420(d)(2) provides that an insurer seeking to disclaim liability or deny coverage for claims arising out of bodily injury or death must provide written notice of disclaimer "as soon as is reasonably possible."

82.     The requirement is strictly enforced.  The New York Court of Appeals has repeatedly held that an insurer's failure to provide timely written notice of disclaimer renders the disclaimer ineffective as a matter of law.

83.     Courts applying § 3420(d)(2) routinely hold that delays measured in weeks or months, absent a valid and specific explanation, render disclaimers untimely as a matter of law.

84.     The Underlying Lawsuits are bodily injury actions arising in the State of New York. Accordingly, § 3420(d)(2) applies to James River's coverage determinations and to any disclaimer issued in response to Hallen's tenders as an additional insured.

85.     In the *Kanare* Lawsuit, Hallen's claims administrator, Helmsman Management Services ("Helmsman"), tendered the defense and indemnity of Hallen and National Grid to NY Paving and James River by letter dated July 11, 2022.

16

86. James River acknowledged that it received notice of the *Kanare* Lawsuit on June 10, 2022.

87. James River did not issue its denial of coverage in the *Kanare* Lawsuit until December 2, 2022.

88. Accordingly, James River waited approximately six months after receiving notice of the claim, and approximately four and one-half months after the written tender, before issuing a disclaimer in the *Kanare* Lawsuit.

89. In the *Lakin* Lawsuit, Helmsman tendered the defense and indemnity of Hallen and National Grid to James River and NY Paving by letter dated February 8, 2023.

90. James River denied coverage for the *Lakin* Lawsuit on May 14, 2023.

91. In the Tavarez *Lawsuit*, Hallen tendered the defense and indemnity of Hallen and National Grid to James River and NY Paving by letter dated February 13, 2024.

92. To date, James River has refused to acknowledge or disclaim coverage for the *Tavarez* Lawsuit.

93. In the *Gioia* Lawsuit, Helmsman tendered the defense and indemnity of Hallen and National Grid to James River and New York Paving on June 8, 2021.

94. Over a year later, on October 7, 2022, James River denied coverage and indemnity in the *Gioia* Lawsuit.

95. Each of the Underlying Lawsuits alleges bodily injuries arising from roadway or sidewalk conditions associated with work allegedly performed by NY Paving pursuant to the Contract.

96. James River's denial letters rely upon coverage defenses that fall squarely within the scope of New York Insurance Law § 3420(d)(2), including contentions that the alleged injuries did not arise out of NY Paving's work and that Hallen and National Grid do not qualify as additional insureds.

17

97. Such coverage defenses constitute disclaimers within the meaning of § 3420(d)(2) and must therefore be asserted as soon as reasonably possible after the insurer receives notice of the claim and the grounds for disclaimer.

98. James River failed to comply with that statutory requirement.

99. Because James River failed to comply with § 3420(d)(2), its purported disclaimers are ineffective as a matter of law. As a result, James River is obligated to provide Hallen and National Grid with a defense in the Underlying Lawsuits and to reimburse Hallen and ORIC for the defense costs they have incurred as a result of James River's failure and refusal to defend.

**WHEREFORE**, Plaintiffs, Old Republic Insurance Company and The Hallen Construction Co., Inc., pray that this Honorable Court enter an order as follows:

A. As to Count I, a declaratory judgment that James River owes a defense to Hallen and National Grid as additional insureds under the James River Policy for the Underlying Lawsuits on a primary and non-contributory basis pursuant to the terms of the Contract and the James River Policy;

B. As to Count I, a declaratory judgment that ORIC and/or Hallen have no obligation to reimburse James River for defense fees and costs incurred in defending Hallen and National Grid, as James River has a primary and non-contributory duty to defend Hallen and National Grid as additional insureds under the terms of the Contract and the James River Policy;

C. As to Count I, an award of damages and other relief resulting from James River's breach of its duty to defend Hallen and National Grid under the James River Policy, including but not limited to actual damages, compensatory damages, costs, and fees, including reasonable attorney's fees;

D.      As to Count II, an award of damages and other relief resulting from James River's breach of its duty to defend Hallen and National Grid under the James River Policy, including but not limited to actual damages, compensatory damages, punitive damages, costs, and fees, including reasonable attorney's fees, owing to the willful attempt to refuse insurance coverage;

E.      As to Count III, a declaration that James River's disclaimers of coverage are untimely and ineffective under New York Insurance Law § 3420(d)(2), and that James River is obligated to defend and indemnify Hallen and National Grid as additional insureds in the Underlying Lawsuits;

F.      As to all counts, prejudgment and post-judgment interest at the maximum allowable rate; costs and fees; and

G.      As to all counts, any additional relief this Honorable Court deems just and appropriate.

Dated: April 9, 2026                                    Respectfully submitted,

                                                        *Peter S. Samaan*
                                                        By:_____
                                                        Peter S. Samaan
                                                        Samaan Sheehy & Gillespie, LLP
                                                        90 Merrick Avenue, Suite 802
                                                        East Meadow, New York 11554
                                                        Email:  PeterSamaan@ssgllp.com

                                                        David L. Koury (*PHV forthcoming)*
                                                        Adrian T. Rohrer (*PHV forthcoming)*
                                                        Sirjan S. Arora (*PHV forthcoming)*
                                                        BATESCAREY LLP
                                                        191 North Wacker, Suite 2400
                                                        Chicago, Illinois 60606
                                                        Firm I.D.: 60834
                                                        Email: dkoury@batescarey.com
                                                                arohrer@batescarey.com
                                                                sarora@batescarey.com

*Attorneys for Old Republic Insurance Company and The Hallen Construction Co., Inc.*